IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**JOEL MACDONALD**                                                                **PLAINTIFF**

V.                                   No. 3:21-CV-00254-ERE

**KILOLO KIJAKAZI, Acting
Commissioner of Social Security**                                       **DEFENDANT**

## ORDER

Plaintiff Joel MacDonald appeals the final decision of the Commissioner of the Social Security Administration denying his Title XVI application for disability benefits. For reasons set out below, the Commissioner's decision is AFFIRMED.

**I.   BACKGROUND**

On January 23, 2020, Mr. MacDonald protectively filed an application for benefits due to degenerative disc disease, bipolar disorder, migraines, vision loss, hearing loss, obesity, asthma, sleep apnea, and ADHD. *Tr. 13, 20, 246*.

Mr. MacDonald's claim was denied initially and upon reconsideration. At Mr. MacDonald's request, an Administrative Law Judge ("ALJ") held a hearing on February 24, 2021, where Mr. MacDonald appeared with his lawyer, and the ALJ heard testimony from Mr. MacDonald and a vocational expert ("VE"). *Tr. 36-62*. The ALJ issued a decision on March 19, 2021, finding that Mr. MacDonald was not disabled. *Tr. 10-35*. The Appeals Council denied Mr. MacDonald's request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 1-6*.

1

Mr. MacDonald, who was twenty-nine years old at the time of the hearing, has attended some college and he has past relevant work experience as a merchant patroller. *Tr. 21, 42, 58-59.*

## II. THE ALJ's DECISION[1]

The ALJ found that Mr. MacDonald had not engaged in substantial gainful activity since January 23, 2020, the application date. *Tr. 15*. The ALJ concluded that Mr. MacDonald had the following severe impairments: degenerative disc disease, degenerative joint disease, obesity, headaches, hearing loss, hypertension, asthma, obstructive sleep apnea, attention deficit hyperactivity disorder, bipolar disorder, generalized anxiety disorder, and posttraumatic stress disorder. *Tr. 15-16.* However, the ALJ found that Mr. MacDonald did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 16.*

According to the ALJ, Mr. MacDonald had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: (1) only occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g).

crawling; (2) only occasional work overhead bilaterally; (3) no concentrated exposure to temperature extremes, dust, fumes, humidity, chemicals, or other pulmonary irritants; (4) no exposure to noise above the moderate level as defined in the DOT; (5) only occasional contact with the general public; (6) only simple instructions and simple tasks that require little independent judgment to perform those tasks; and (7) only occasional changes in a routine work setting. *Tr. 19*.

In response to hypothetical questions incorporating the above limitations, the VE testified that there were unskilled jobs available with these limitations, such as table worker and addresser. *Tr. 59*. Accordingly, the ALJ determined that Mr. MacDonald could perform a significant number of jobs existing in the national economy, and found he was not disabled.

### III.   DISCUSSION

#### A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider

not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

    **B.**    **Mr. MacDonald's Arguments for Reversal**

Mr. McDonald contends that the Commissioner's decision is not supported by substantial evidence. He argues that the ALJ (1) erred in discounting Dr. Trent Lamb's medical source statements; (2) failed to provide an adequate RFC; and (3) did not resolve a conflict between VE's Testimony and the Dictionary of Occupational Titles. After careful review of the record and the parties' briefs, the Court affirms the Commissioner's decision for the following reasons.

    **1.**    **ALJ's Treatment of Opinion Evidence**

Mr. MacDonald asserts that the ALJ erred in evaluating the medical opinion of his treating physician, which was set out in mental and physical medical source statements. *Doc. 10 at 47-51*. Specifically, Mr. MacDonald contends that the ALJ failed to properly address the supportability and consistency of Dr. Lamb's opinions. This argument is without merit.

The ALJ noted that Dr. Lamb claimed that Mr. MacDonald had "marked and extreme limitations in each of the four functional domains." *Tr. 24*. However, the

ALJ concluded that the opinion was neither supported by nor consistent with the medical records, which showed that Mr. MacDonald's "mental status examinations were frequently normal." *Id.* This conclusion is supported by a review of the records. *Tr. 24, 1668-1732*. In fact, as the ALJ pointed out, Mr. MacDonald told his mental health provider on December 21, 2020 that he had not had anxiety "in quite some time." *Tr. 24, 1699*. During the same visit Mr. MacDonald reported feeling "fantastic" after a prescription drug adjustment. *Tr. 1700*. Additionally, and contrary to the limitations set out by Dr. Lamb, Mr. MacDonald told a medical provider that he walked 1.5 miles, twice a week, to the bus stop. *Tr. 501*. An ALJ may properly discount medical source statement with "limitations that 'stand alone,' did not exist in the physician's treating notes, and were not corroborated through objective medical testing." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

The ALJ also pointed out that Dr. Lamb's medical source statements were in check-box form. The Eighth Circuit has held that medical assessments that "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses, [and] cite no medical evidence and provide little to no elaboration . . . possess 'little evidentiary value.'" *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). Additionally, when the treating doctor's opinion is only checked boxes without explanation, "that basis alone" is sufficient to support an ALJ

5

giving the "assessment little weight and relying more heavily on other opinions in the record." *Thomas*, 881 F.3d at 675. The ALJ properly addressed Dr. Lamb's conclusions and explained his reasons for discounting them.

### 2. The RFC is Supported by the Record

A claimant bears the burden of proving his RFC, which represents the most he can do despite the combined effects of his credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Id*. Part of the RFC determination requires assessing a claimant's credibility regarding his subjective complaints.

The Court should normally defer to an ALJ's credibility determination. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial review." *Id*. When evaluating the credibility of a claimant's subjective complaints, an ALJ must consider the *Polaski* factors, which include "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (quotation omitted) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Also

relevant is the absence of objective medical evidence supporting the claimant's subjective complaints, although the ALJ cannot discount a claimant's credibility based on this consideration alone. *Id*. at 932.

  Mr. MacDonald contends that the RFC is not supported by the record because he testified that he could sit for only 10-15 minutes at a time. *Doc. 10 at 51*. The ALJ properly discounted Mr. MacDonald's subjective statements, finding that they were "not supported by the evidence of record to the extent that they suggest a more restrictive [RFC]." *Tr. 26.* For example, on a February 2020 function report, Mr. MacDonald was asked to circle listed activities affected by his illness, injuries, or conditions. *Tr. 282.* In response he circled fourteen items, but he specifically did not circle "sitting." *Id.* On the same form, Mr. MacDonald indicated that he could walk only fifty yards before needing rest. *Id*. Yet, he told a medical provider that he walked 1.5 miles, twice a week, to the bus stop. *Tr. 501*. Additionally, Plaintiff claimed he enjoyed going to the movies, an activity that requires sitting more than 10-15 minutes at a time. *Tr. 407*.

  Mr. MacDonald also asserts that his obesity affects his ability to work. *Doc. 10 at 52*. However, Mr. MacDonald was obese even when he was working. *Tr. 1234*. "[A] condition that was not disabling during working years and has not worsened cannot be used to prove present disability." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) (citation omitted). Additionally, the ALJ "considered the potential impact

of obesity in causing or contributing to co-existing impairments" when assessing the RFC. *Tr. 22*.

Finally, Mr. MacDonald argues that, in determining his RFC, the ALJ should have considered a limitation of occasional reaching, handling, and fingering. *Doc. 10 at 53*. The objective evidence shows otherwise. A function report from one of Mr. MacDonald's doctors indicated that he could carefully handle objects frequently and could constantly handle objects with his fingers. *Tr. 1144*. Though this report, dated July 2018, predates the period at issue, the ALJ found it partially persuasive because the limitations were consistent with the record as a whole. *Tr. 25*. Notably, a January 2018 physical assessment states that Mr. McDonald had "good grip in [the] right hand." *Tr. 1400*. Mr. MacDonald also repeatedly denied "numbness, arm weakness," consistently demonstrated normal muscle and upper extremity strength, and had normal range of motion. *Tr. 666, 667, 1225, 1239*. Based on the evidence as a whole, the ALJ's findings were supported by the record. There is no reason to depart from the deference normally given to the ALJ's credibility determination.

### 3. The VE's Testimony and the *Dictionary of Occupational Titles*

Mr. MacDonald correctly points out that the ALJ had a duty to get a VE to resolve any conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014). The ALJ also had a duty to explain the clarification in his ruling. *Id.*

At the hearing, the ALJ and VE discussed the fact that the DOT does not explain directional reaching. *Tr. 59.* The VE testified that based on his "past training and experience and familiarity" with the jobs, they involved occasional "reaching in any and all directions." *Id.* If Mr. MacDonald's lawyer believed this explanation was inadequate, she could have questioned the VE about it. She did not.

In similar cases dealing with the subtle difference between occasional and frequent reaching, district courts have held that a VE may rely on his judgment and experience with the jobs in questions to resolve any arguable conflict. See *Jones-Brinkley v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00058-JTK, 2021 WL 371689 (E.D. Ark. Feb. 3, 2021). While a few cases from this Circuit have reversed an ALJ for failing to resolve a reaching conflict, those cases are distinguishable, because the VE, in those cases, either did not address the conflict or gave a one-word response.[2] In this case, however: (1) the ALJ recognized the conflict; (2) asked the VE about the conflict; (3) the VE explained the conflict adequately; and (4) the ALJ addressed the issue in his opinion. *Tr. 28, 59*. Substantial evidence in the record supports the ALJ's conclusion that Mr. MacDonald's overhead work limitation does not prevent him from performing the duties of a table worker or addresser.

---

[2] See *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); *Coates v. Colvin*, No. 14–0843–ODS, 2015 WL 4610991, at *2 (W.D. Mo. July 30, 2015) (finding that ALJ had erred in failing to "obtain an explanation for" a conflict between the vocational expert's testimony and the DOT).

## IV.   CONCLUSION

The ALJ applied proper legal standards in evaluating Mr. MacDonald's claims, and substantial evidence supports the decision to deny benefits.

Accordingly, Mr. MacDonald's appeal is DENIED and judgment will be entered for the Commissioner. The Clerk of Court is directed to close the case.

IT IS SO ORDERED this 19th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE